Good morning, Your Honors. May it please the Court, my name is James Seagroves and I appear on behalf of the Defendant's Appellants here. There are two principal issues in this breach of lease dispute that we hope to discuss with the Court this morning. The first relates to the District Court's determination regarding the effect or the remedial consequences of lease termination, and then the second issue relates to the District Court's determination that the guarantee document and other documents in the record satisfied Georgia's statute of fraud. There is no dispute in this case that the lease was breached and that Elderberry elected to terminate the lease. The District Court here, however, essentially made the same threshold legal error that the District Court made in the Tinbrook case, which was a published decision issued by this Court some time ago. This Court in Tinbrook explained that under Virginia law, and there is no dispute that Virginia law governs the question of remedy with respect to lease here, that under Virginia law there is a key distinction between an agreement where that is a contract to lease as opposed to a contract of lease. And under Virginia law, a contract to lease, of course, is a lease in which the tenant has never taken possession of the premises, and in that context, this Court explained under Virginia law, the question of remedy is treated like any other breach of contract. I'm sorry, what argument are you addressing right now? This is with respect to lease termination and what the effect of that, so that would be the first point. This Court in Tinbrook explained in a context of a contract of lease where there has been possession of the premises by the tenant, that normal principles of contract do not apply on the question of remedy. Instead, the Court applies landlord-tenant law, and what's critical here is that under landlord- tenant law in Virginia, as in most states, termination of a lease by the landlord has significant consequences, and the way to avoid those consequences is to include language in the lease that addresses what a landlord's remedies might be in the event of termination. The lease at issue in this case, which was executed in 2000, does not address, specifically address, either abandonment of the premises by the tenant or the effect of lease termination vis-a-vis the landlord's legal remedy. It is certainly true that the lease at issue in this case specifically addresses the landlord's remedies in the event that there is a re-entry onto the property. That being said, the re-entry provision in the lease specifically says that the re-entry, the mere act of re-entry, will not serve as a termination of the lease. So in that instance, the lease is still in effect. Now, that's the language that the District Court focused on, the language in the re-entry provision with respect to the landlord remedies. As we explain in our briefs, the simple fact is that Elderberry elected to terminate the lease, as clearly was its right to do under the lease. And in doing so, the landlord cannot take advantage of the re-entry provisions remedial language. And unless there are any further questions with respect to that issue, I'd move on to the guarantee issue. So that's a pretty significant, simple resolution you offer, that is that under Virginia law, once the election is made to terminate, as opposed to simply re-enter a different result. Correct. So, and the trial judge seemed to have resolved that by saying, well, in effect, what they were doing was to re-enter and that the intent was never to do that. Is there an intent element that we should consider? Only with respect, I don't believe so, Your Honor. I could only see an intent element with respect to termination, like did they accidentally send the termination notice or something like that, and there's no evidence of that. Intended to terminate. Correct. There's no doubt about that. The problem is, maybe they didn't intend to terminate and not get the damage. Well, intent from the perspective that the intent was not to avoid, to invalidate the recovery of future rents, and I think there's been at least some discussion to that extent, some consideration to the extent that when you look at this, you look at, and I think that's where the trial judge was going with it, was that the intent here was not to do that. What they were intended to do is simply to go in, re-enter, and re-let the property. Well, if that was their intent, Your Honor, they never should have sent the termination notice. I think that at least it's fairly clear that Elderberry had a landlord here, had a decision to make, and it made the decision to terminate. If it has remorse over making that decision, I can understand that. I don't think it affects the legal merits of the question of a remedy. With respect to the... Is there maybe something in the contract that accelerates this or triggers the liability before the termination? The only instance I could see that happening, Your Honor, is if re-entry occurred prior to termination. Certainly there I could arguably see the language, the remedial language, at the end of the re-entry provision being triggered if there has been no termination. But once there's been termination, there's no going back. Leases is no longer in effect. And, Judge Greger, to your point regarding fairness that the prior appeal, the COA issue, I think it's abundantly fair to expect Virginia landlords, when they're drafting lease agreements, to understand what Virginia law, common law, provides. And so if a Virginia landlord wants to alter the effect of a common law rule, they can do that. They just have to put language in the agreement. And there is no language in the agreement at issue here that affects the landlord's or that speaks to the landlord's remedies in the event of lease termination. And so your position is short of that language, it has to be an election of one or the other. You can't do both. I think that's that's correct, Your Honor, in the sense that the law provides that the consequences of lease termination are such that you can't terminate and then take advantage of a re-entry provision that reserves some remedy. Because it seemed to me like if the logical extent of that, you can do all of those things, that you could terminate, possess, get another tenant in, collect rent, and still get all your full rent. Could you? Not if there's been a termination. I think that... No, no, no, no, I'm just saying that that argument, I'm following your opponent's argument. Wouldn't that be the logical extent of the argument? Certainly they make the argument that... You can do it all. As I understand it, that is their argument. That generally speaking, the introductory language in paragraph 7 of the lease says the landlord's remedies include the following. And there is no expressed language in between the two paragraphs that makes it abundantly clear that it's an either-or proposition. That being said, as a matter of law, it isn't either-or proposition when a lease is terminated that precludes the remedy under the re-entry provision. To make sure it's clear, as a matter of law, you can't read that in the conjunctive. It has to be a disjunctive language in terms of election. Yes. And that's the common law rule. Correct. Has it been expressly adopted by the Virginia Supreme Court? With respect to the effect of lease termination? I think the answer to that is no, but. If I can give the answer to the but. This court in Tinbrook, granted it didn't deal with a situation there where there was an express exercising of a termination right. This court did? This court, interpreting Virginia going back, I think, to the late 1800s. But we would benefit somewhat to know if the Supreme Court of Virginia actually felt this way. Is there room for us to ask for a certification of this question? Certainly, I think. I mean, I'm listening to Judge Gregory, who's a very long-standing Virginia lawyer and judge, and it seems reasonable to me that someone could, in the words of Judge Marks, intend, as we both talked about, intend to collect these unaccrued. The contract actually says, you breached this, we want to get our money, so to speak. But they're being trumped by the common law here, and it just seems to me that under these circumstances, I'm thinking of a lawyer sitting in his office looking at this thing, says, oh, just sent my letter, said we're going to terminate. We know we can go in and take over the premises, which is the same thing. And, you know, they probably should have read the common law on this a little bit before and understood it. But my understanding is that the Supreme Court of Virginia does accept referral of questions of law that are unresolved. I think the reason why that's unnecessary, beyond the reason why we can't get that done, is that the attorney sitting in his or her office, as Your Honor mentioned, writing, we can terminate the lease, they needed to read Tinbrook. They needed to read a published decision of this court based upon Virginia law that had, and the reason I wanted to get to that but answer to my initial question of whether Virginia's appellate courts had decided this issue was, the main issue in Tinbrook was that abandonment and then re-entry would, as a matter of law... The decision of this court interpreting an unsettled law in Virginia does not make it law in Virginia, does it? In other words, the courts of Virginia are not bound to follow that. Absolutely. They might, and we I'm thinking, you're talking about this lawyer sitting in his office, he doesn't have to look at Fourth Circuit law and try to figure out what, except I guess he knows it's in federal court, so he probably should, right? Well, I think that's right, but if I could, the law that, the Virginia law that this court in Tinbrook was interpreting, was on the legal effect of abandonment, and because abandonment operated as a matter of, or rather, abandonment and then re-entry, operated as a matter of law to the effect of termination was not in dispute. It was whether the abandonment and re-entry equaled termination. It seemed pretty clear to this court that termination had significant consequences, and so while Tinbrook itself did not involve exercising a termination right under the lease, it did address the effect of lease termination, but if I could quickly move on to the question of the guarantee, there's no dispute that that issue is governed by When it comes down to it, I think the easiest way to explain why the district Well, the guarantee is, is it enforceable? It doesn't contain the identity of the principal debtor. That's correct, Your Honor, and I think that even... How are you going to get that thing enforced with that? Strong argument be the one that you want to move away from. I'm sorry? Go ahead, go ahead with where you're going with this. I think the critical threshold issue is to is it supposed to be, and it's supposed to be the party to whom the lease has been assigned, the new tenant in the language of the guarantee document. Certainly the guarantee document itself doesn't identify that entity. There's a there's a blank for that. Neither does the lease amendment. Now, certainly the lease authorizes living centers that then originally... Isn't that required under the statute of frauds? Yes, Your Honor, it is as interpreted by Georgia's appellate courts. We're certainly in a different circumstance than we were with respect to Virginia Planned Affairs and everything I'm seeing on this so far, so where's your argument? The argument is this, Your Honor. The lease amendment, there has to be, and the principal debtor has to be named. The closest that the lease amendment, which is the document that the court interpreted in tandem with the guarantee document, the closest the lease amendment comes to that is saying that living centers can assign the lease to a wide swath of parties. The Georgia Court of Appeals in the Legacy Community case, which is a case that we decide we decide in our briefs, which was decided just two or three years ago, specifically said that that kind of broad language that lists a number of possibilities as to who the principal debtor could be is not sufficient. The principal debtor, even if it's a corporate entity, has to be specifically named. Now, I want to say I sort of forgot which party you were representing on that issue, so that's why my questions were directed that way early. Okay. I got it. I see where you're going. Well, if there's any, if there's any doubt, the guarantee is unenforceable. That, again, may seem unfair, but as we point out in our reply briefs, that's Georgia law, and there's no argument that Georgia law doesn't apply here, and for that reason we would ask that component of the district court's judgment be reserved the balance of my time. Thank you. May it please the court, my name is Jim Crockett. I represent Elderberry of Weber, Inc. I want to start, if I can, your honors, with the termination, because I think you were misled there about the state of Virginia law. There's certainly no reason to refer this to the Virginia Supreme Court, because they have addressed these issues. In all the cases that you will read, and every case that you've been cited, it says you can change the common law by contract, and it goes through the contracts that the people have changed, and it reaches decisions based upon the language in those contracts. You have one that didn't have a re-entry clause in it, so you don't get into re-entry at all. You have one that says you can re-enter, or you can terminate, big fat or in the middle of it. You had another one... Does unconscionability factor into it at all, your broad statement you started with? No, sir, especially not in this case, because the idea was... No, I'm asking you broader. You said that you can change the common law by contract any way you want. I'm asking you, does unconscionability surmount the change? I think between sophisticated businessmen, the limits of unconscionability... And women, but it's a very thin line of unconscionability. The only thing I heard mentioned that might be touching upon those types of concerns was the idea that you could collect your rent and go back in and, you know, put another tenant in there and double dip on the rent. That might... Somebody might find that unconscionable. What prevents you from doing it in your read of this contract? Well... In the contract, four corners. What prevents you from that scenario, which clearly you didn't do. We didn't do that. I know that. You didn't, but what prevents you from doing it? Well, you know, it's... Actually, it's not really what prevents us, it's what allows us to do that if we were so inclined. Because if you look... Alright, well then, you're going to change my question to allow, that's fine. I accept that amendment to my question. Go ahead and answer it. Well, there's actually a statute in Virginia that addresses this. Judge Moon... This wasn't the basis of the argument in front of Judge Moon, so... No, no, no. ...argument in front of me saying that the agreement troubles the common law, which I think you're right. I'm sorry, I thought... So what in this agreement prevents you from doing exactly what Judge Gregory said? I apologize. I thought I was taken off of that. Isn't that impressive? Thank you, Judge. The agreement very specifically lists four different remedy sections under it. And the idea was floated to you that it's got to be oars in there. And that's why, in the absence of some strong showing or some clear showing that they were not cumulative remedies, that is exactly the opposite of Virginia law. Virginia law, and we've discussed this in our brief... Sir, I'm just going to try one more time. I'm sorry. Would you look at JA 172? That is, as I think, the operative language... Oh, of the contract. Yes, ma'am. Yes. And remember, we've already said the contract can trump Virginia law. What in the contract prevents you from doing just what Judge Gregory said? You know, Your Honor, I don't know that there's anything in the contract that would have barred us from doing that. Except that we didn't do that. I understand that. But if the contract is to be read the way you read it... Yes, ma'am. We have to look at how it would apply to everybody. Right? I don't believe so, Your Honor. I believe you only have to look at how you apply this contract to these parties. And I do believe you have to put... The contract is a mutual document. We don't go see how each party applied it. We look at what the contract says in and of itself. Well, I would agree with you if somebody else came back with our contract that you would want to apply that the same way. I certainly agree with that. But this contract, when you read the remedies in it, you have to read them cumulative. Why? We agree on... Okay. Well, I just heard the argument that it was just the opposite. Why do you have to read them as cumulative? Because that's the Virginia law, Your Honor. Virginia law, and this is in our brief, in the Bender Mill Company v. Thornwood, or Tom Woods Farms case, the court said the remedies provided will be exclusive only where the language employed in the contract clearly shows an intent to make them exclusive. They are, by presumption, cumulative remedies, which means under Virginia law, you can do them all. Now, Your Honor, I don't agree that that necessarily means when you get to common law or provisions of damages that a court's going to necessarily allow you to collect both. A court may well say, you can't do that. It just never came up in this case because we didn't try to do that. But if you look at Judge Moon's opinion at footnote 13, because it wasn't raised in the case below, he goes on to say we could have done that if we wanted to because under Virginia law, you can collect the damages and collect the rent and re-rent the property, but we didn't do that. And so on this particular part, this particular point of the remedy and whether we have our termination notice barred any other remedies, number one, you have to look at the contract, which provides for cumulative remedies, and as Judge Moon pointed out, it's right there in the re-entry one that says you can collect future damages. There's a name for that clause, which is escaping me right now. But that is in the contract. The other aspect of this particular damages is that they want to cut off all of the damages based upon termination versus re-entry. There is no dispute what the common law requires here. We were dealing simply with the common law. A letter that says I'm terminated cuts off future damages. We agree to that, don't we? It cuts off future rent, Your Honor. I think it cuts off future rent because you then go back into the place of the contract. I will accept that. I just want to get to that point that the common law, at least, is the basic law. Your contention is that your contract has a provision in it that trumps the common law here. And in this instance, when trumping the common law here, you lose this right independently to do that. In other words, you can't just terminate and say, out of my life. There is an advantage in some contracts to simply say to the person who's leasing a property, I terminate this. And it may well be because once I terminate your lease, which is not very profitable to me, I got someone who's going to pay a lot more money for this property. Or I might not even want you on this property anymore. So at common law, there's this right. I want to kick you off my property. Get out of here. And you don't owe me anything. I've got my valuable property. I'm going to make more for it. So you're telling me you are now foreclosed from doing that? Or do you also have that option in addition to the remedy that you can assert in a contract? I think when you have cumulative remedies, you can choose among the cumulative remedies. You could choose either to terminate or you could choose to stay with the contract. Or you could do them both. No, that's the answer. What happens if you do the first and you say, I terminate because I want to get some more money. Now you can come back and say, I'm going to get the more money. Plus, I'm going to go and get what's in the contract. You got that too? According to you, you have that right. And according to the Virginia authorities cited by Judge Moon, you have that right to do that. It's unconscionable, isn't it? I guess that's why we didn't do it too, Your Honor. Law is not just at the whim of your largesse. It has to have some structure and contours beyond just your being a nice person. It's unconscionable, isn't it? If the damages you seek are unconscionable, you may have a remedy to reenter. You may have a remedy to terminate. But I don't buy the idea that that necessarily means all damages are open house. I think the damages have to put you back in a position you were going to be in if the breach had not occurred. Why? It's a general idea. You're a sophisticated business person. You can read the contract. You either have the right to terminate or if you don't terminate, you can do these other things. Judge, there's no or in the one I've got. And the Supreme Court of Virginia says you put ands in there. Colleague, I think very clearly had you agree what Virginia law is, we start out as the basis. And the contract has to be trumping it. And if there's not clear language in the contract trumping it, Virginia law stands, right? That's right. And as Judge Moon said, there's clear law in here that says if you reenter, which we also did. If you go back to the letters that are in the record and recited from Mr. McAnlis, the first one said you're in default and we're going to sue you, reenter, and or terminate. We're leaving them all out. It said them all. And then, read the opinion, they got in trouble with the Virginia regulators. They got their Medicare and Medicaid cut off and they abandoned the facility. So there was a termination notice sent, but the place was empty. So when it came time to reenter and go back in, they reentered. And I do want to talk about this idea that other damages are cut off because this is a special use facility. It's under a license from the Commonwealth of Virginia. It's got a certificate of need from the Commonwealth of Virginia. It is a nursing home, and they were about to lose that. That is undisputed, and they had to go back in and fix all the damage that was done to the place because it was trashed, and you can read Judge Moon's opinion on that. That isn't appealed. And they spent all this money. And there's nothing wrong with reentering on the contract if that's all you do, but doesn't that contemplate, at least in the lease, that the lease has not been terminated? The reentry of it seems to indicate you're coming on a premises during the period of a lease. But if you've already terminated, you're just going on your own property. You're just taking over. The termination itself, even though constructively you haven't gone on the property or actually haven't gone on the property, the termination itself, you've just got your property back. They don't have it in rights. But what if you're getting your property back and making yourself whole requires you to put someone back in there to keep it as a nursing home so you can keep the license? The value of this property goes right down to the lease. You shouldn't have terminated the lease. That's the second problem. That's the second problem is when you don't terminate, you reenter. I'm sorry, Your Honor, did you say we could have just not terminated? Ben, you shouldn't have terminated the lease if you're going to exercise those kinds of control over the property. Don't you get into a metaphysical question about what do you do with the next lessee? Because obviously the living centers and mariner people are not going to go back into this place. They've lost their certifications. The place is trash, and if you want to keep your certifications, if you want to keep your license, someone has to be operating the place. At least in the common law, would you have sent that termination letter? Would you send that termination letter right now? Well, having discussed this with you all for the last, you know, 12 minutes, I certainly wouldn't have. I don't disagree. But I wasn't there. From a logical perspective, it seems to make sense that you sent a termination letter. That doesn't keep you from going on your property and getting your rent. But if you know the law in terms of common law, you wouldn't do that. And that might be just a slight error here, and I understand you're now backtracking because this is not like we did everything, we would do it again. It's like we did this, now we're trying to figure out a way to make this make sense. And I don't disagree with you on that. I think that if it is some ambiguity in this, and it's all coming from the Fourth Circuit, maybe a certification to the Supreme Court of Virginia might be something that you could ask for. Would you ask for that? Do you think so? I don't think it's necessary, Your Honor. I think the cases on the points that were addressed. I think I would ask for it if I was in your position. I would probably say, yeah, that's probably something. That's just my opinion. I'm just thinking because otherwise we're left to try to figure out what Virginia law is, that you say is clear on one side, the other side says it's clear on the other side, and you're putting it to the Fourth Circuit to make that determination, and you really would like to know what the state of law is in Virginia, and the Supreme Court knows it, and there's a vehicle to finding out. I believe on how you read the contract that there is a case, and I've told you about that. It's not my first rodeo. There isn't anything I've encountered wrong in my legal career that I don't think I could have done better in hindsight. I think that's true for all of us. We might want to have done something different to avoid an issue. But the question before us now is, you know, did Judge Moon commit error in his decision? I don't want to leave un- I need to get back to the guarantee, but I do want to make sure the court does realize that the damages that were incurred other than rent, which was offset against the new rent, that those were damages done to fix the problem that was created when they abandoned the facility. It wasn't damages that accrued later any more than an injured person's future care accrues later. The damages, the injury accrued when they abandoned the facility and left it in the condition they left it in. Those are the damages that existed at the time of the termination. Absolutely. They weren't up to fire code. Are you not entitled to those anyway? I think so. I mean, so you don't have to show that the rule of which you're being argued against now, you're entitled to that which you're entitled at the time of termination so it can go back for determination of what damages existed at the time you terminated the contract.  And he describes in great detail where the damages came from and how they floated from. Well, there's this additional question about rent. Well, you said that you're going to get that rent because you're getting that offset from renting the property out. So it sounds like to me even if we send this back and say, Judge, you got this wrong, calculate damages at the time of termination, is that okay? I believe that gets the only thing that loses is the rent differential. Yes, sir. Which I think they're entitled to. But you asked me if it's okay. The other side, is there any disagreement on that? Because it sounds like to me that goes back to Virginia law. If at the time of termination of the contract, that ends the contract, you are entitled to damages up to that point, I think. Everything that accrued, even under the common law, you would be entitled to that. If it goes on from there, then that's okay because you already got your rent. You're offsetting your rent. To an extent, yes, sir. You're offsetting your rent. I'm having a hard time understanding what the disagreement is there. It's not as great. Maybe the other side doesn't agree with that. Truly as a matter of numbers, it's not as great. I can't imagine the other side can say you are not entitled to damages at the time of termination. Their argument was that these damages because the fixes all came afterwards and part of the fix was getting a new tenant because you couldn't keep your certification. That's a question of fact as to what those are in terms of that. That might be their argument, but they're only entitled to damages up to the time of termination. That's their argument. The trial judge to determine it might be another issue for us to debate, but that is not the legal question in this case here. No, sir, it is not. It is not. Do you want to address the other side? Yes, ma'am, I really do want to talk about the guarantee because this is nothing like the guarantees in the Georgia cases. Each one of the main Georgia cases they want to talk about, each one of those cases were cases where a creditor shoved his form onto either a buyer or a lender or someone like that that had a guarantee clause in it and it had some kind of technical defect in it. Typical commercial use of a creditor giving a debtor a guarantee and signing, and they are very rigorous with that. This didn't happen in this case. This case came up because their client came to my client and wanted to expand this facility and wanted us to pay for it so we could be repaid through future rents, but they also asked for, bargained for, and got the right to assign that lease to any affiliate they wanted to. And it says without our notice, without our permission, and without our consent, they had that right. And we got bargained for and they offered and delivered to us a guarantee by the parent company, which only makes sense because if you have a right to assign it to any unnamed affiliate of the parent company, then you're buying a pig in a poke. And so we asked for the parent company to guarantee it. They agreed with that and they provided a guarantee. And there were two things, one of them I think is trivial, is it uses the language of landlord and tenant versus lessee and lessor. And Judge Moon said it's clear when you read the contract and the attached, and it is attached, it's not only contemporaneous, it's attached, guarantee that you know who they're talking about. And in fact, the paragraph in the lease amendment that talks about the guarantee also uses the language landlord, tenant, not lessee and lessor. It's very clear who the parties were and nobody in this case has ever really said they don't know. You're just trying to beat it on a technicality. The more serious technicality is the blank. The principal debtor is blank. And it's blank for a reason, Judge. It's blank because it's what they bargained for. They have a power of appointment to put someone in there. And at a future date, that's what they asked for was the ability to name that at a later date. Now, as it turned out in the facts, they had already assigned this in 2005. But they actually in 2011 assigned it again, but it was the first one we heard about. And their lawyer sends us a letter that says the guarantee that we gave you, we've assigned it and the guarantee we gave you is in full force and effect. Well, I'm listening to what you're saying and maybe others feel different about it, but stature fraud always brings up a red flag to me that you need to see it. It needs to be in writing. You don't have the name of that debtor in there. There are probably a bunch of cases in which people can say, oh, no, it should have been in there and this is a different situation and it wasn't in there, but this is what it meant. You don't deny that the statute of frauds requires this, do you? The statute of frauds requires it under most circumstances. But as the Supreme Court said in the L. Henry case where the guy, same sort of situation where this time the creditor goes into the closing and makes some changes on the guarantee and makes a misnomer. And he got sanctioned for appealing that on that basis. And the court said that the statute of frauds is for the prevention of frauds and perjuries and not to promote them or to perpetrate them. And Judge Moon cited the same thing in his opinion. He said, you know, this is not a case of my client trying to get out of a contract that no one agrees happened. This is one where they agree they entered the contract, they admit they gave us the guarantee, and they're trying to get out of it. And I'm over my time. Was this bad lawyering by not putting in the name of the debtor? There's no evidence that there was any lawyering on our side at all. You should put the name in there, shouldn't you? They couldn't have, Judge. They bargained for it. The only reason we have a guarantee is because they requested the ability to assign it in the future to an unnamed company. To new tenants. Maybe you can address at the outset the question that Judge Wynn raised about the damages. As I understood the question to be, what are the damages occurred by the time of termination? Actually, let me put it this way. Do you deny that they are entitled to damages at the time of termination? Damages that have been incurred and accrued by the time of termination. The whole question as to what it is, but at the time of termination, you can call it accrued, incurred, or whatever. But that's all they get. Damages should be determined at the time of termination. Yes. And the argument that you're bringing us is that's not what the judge did below. He actually used a formula that went into the future. And so the other side seems to me is conceited. We only seek damages up to the time of termination. So why wouldn't we just send it back and say, Judge, calculate the damages up to the time of termination? You argue what's accrued. You argue what's there before them. But I don't think we can do that up here. I might prefer that over referral to the Supreme Court of Virginia. I think the other side does, too. You guys don't particularly care for the Supreme Court of Virginia telling you what the law is, Virginia? You'd rather us do it? I think it's the delay. Yeah, sure. I think the fundamental legal tussle here, and I didn't hear counsel address it, is what law are we – what hornbook of law are we applying to the question of damages? Counsel said that they were entitled to be put into the position that they would have been in had the contract been performed. But I didn't think this was a damages question initially. I thought – I viewed it as, well, the contract says we haven't really terminated. We can go on, stay on this property, and we're entitled to all future rents and everything as though we didn't terminate it because we trumped the come along. What I now hear is, if we're going to talk about damages, they accept that they are only entitled to damages at the time of termination, and that seems to be what you agree to. So what is the dispute now? We send it back and say, Judge, calculate the damages at the time of termination. You don't like what he calculated? Come back up here, probably. I think that that's certainly a remedy that the court could do. And then there would be, I believe, litigation in the district court as to what – When does the damages – That part confuses me because I think you agree that the come along says that once you terminate, that's it. You're saying that's the law that applies. Yes. At that point, they're entitled to damages that is accrued or that exists at the time of termination. Damages that are recoverable under landlord-tenant law and or – And that's not what a trial judge did. Trial judge says he looked at it beyond that. That's what you up here are arguing. So now the other side says, yeah, damages at the time we terminate. So why don't we just send it back and just say damages at the time of termination. I'm just reluctant to accept something that at first flush is good. I understand I may not include all the damages you've got in here, some of the contract and other things that are there. Yes, Your Honor. But that's what you're entitled to is no more than the damages at the time of the – they are entitled to no more than the damages at the time of termination. And I think that that's – essentially that's what this court did in Tinbrook. It said by – granted there was a termination, but in that case the question was the timing of reentry itself. Okay. But just to be absolutely clear with no excess language, you concede that they are entitled to the damages on the property at the time of termination. You may argue with what those damages are and how they're calculated. You have to. You've already done that, haven't you? Hearing it as Your Honor phrased it, if I did say that – Okay. So why wouldn't they be entitled to that? They would not – Why would they not be entitled to that? They would be entitled to the remedies that the lease provides, arguably. And the lease does not provide for consequential damages, for example. You're saying they're entitled to contract damages? No. No, no, no. They're not entitled to consequential damages. Basic contract – and I think it's fair in Virginia, consequential damages is an element of contractual damages under Virginia law, at least as I understand it now. If I could move just quickly to the – So you're not conceding. Is that it? What damages were they entitled to at the time of their termination? They were entitled to unaccrued rent, which was something around $250,000. Arguably, they would have been entitled to the cost to put the facility back in the physical condition in which it would have been had the lease been performed. I think there's a question as to whether that kind of damage would be recoverable.  Are you arguing about what Virginia law entitled them to at the termination of the lease? That's what the argument would be about. Sure. At most, it entitles them to the unaccrued rent and the cost of placing the physical premises back into the condition that it would have been in had the covenant to keep the premises in. You said they'd be entitled to unaccrued rent. No. That's what you said. I apologize. Accrued rent. I thought that. Be careful what you say. Yes, Your Honor. That aspect of the language they used, I know you don't agree with the characterization, but the trashing of the place that they had to fix up, you agree that that would be. I'm just saying to make sure we talk about the same thing. Yeah. You agree that would be within the scope of permissible contract damages.  Yes. There's a distinction between, if I may. Making it nicer for the new tenant. I think that they would be entitled, arguably, to what they would have been entitled had this lease terminated normally and if the facility were turned over in the condition in which it was. Yeah, because otherwise, you could just get out of a rent. Just by defaulting, they terminate and you go free. Okay. We detained you, so you can talk a little bit about that. With respect to the guarantee issue, counsel mentioned sanctions. I don't understand that there's a request for sanctions for making the guarantee argument in this case. No, no, no, no, no. He was citing the Georgia case. Sure. And talking about sanctions there. There's no requirement here. But do I understand it correctly that part of your bargain, part of the reason that you were prepared to give out this guarantee was that you were going to put in there new tenant and you were going to designate who new tenant was. It was an original tenant. Correct. And the only entity that can be new tenant in these documents is Families Senior Care Holdings, LLC. Or any of its, I think, the language. But that was, yeah. Yes, and that's community legacies. That decision goes to that issue. If I could just quickly distinguish the Yale Enterprises case that counsel mentioned. The major distinction is that that's not an omission case. That's a case involving a circumstance in which the principal debtor's name in the document had a typo in it. Essentially, the name of the corporate entity had been inadvertently shortened. And it's not an omission case. And the Georgia cases are pretty clear about distinguishing between omissions and other types of cases involving defects with respect to the principal debtor. Are there no further questions? Thank you very much. We will come down and greet the lawyers and then take a short recess.
judges: Diana Gribbon Motz, Roger L. Gregory, James A. Wynn, Jr.